UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| Alex Volinsky, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    - against -<br><br>Acer America Corporation,<br><br>      Defendant | Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

### FACTUAL ALLEGATIONS

1. Acer America Corporation ("Defendant") manufactures, markets, and sells laptop computers, such as the Spin 1 SP111-33 under the Acer brand ("Product").



2. Defendant markets its laptops with the representations that they are built to last, are technologically advanced, and will remain in proper working condition for years to come.

> The sleek all-metal design offers exceptional durability and ensures you work and play in style.
> Lightweight and easy to carry, you can keep the Spin 1 notebook at your side virtually everywhere you go.

The sleek all-metal design offers exceptional durability and ensures you work and play in style. Lightweight and easy to carry, you can keep the Spin 1 notebook at your side virtually everywhere you go.

3. The description of the Product tells consumers it will function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

I. **PRODUCT MADE WITH DEFECTIVE HINGE MECHANISM**

4. Consumers purchase laptops for their wide range of functionality, ease of use, and convenience, which allow for device operation while on the go, and not solely in a stationary position while at home or at the office.

> The sleek all-metal design offers exceptional durability and ensures you work and play in style.
> Lightweight and easy to carry, you can keep the Spin 1 notebook at your side virtually everywhere you go.

The sleek all-metal design offers exceptional durability and ensures you work and play in style. Lightweight and easy to carry, you can keep the Spin 1 notebook at your side virtually everywhere you go.

5. In addition to these benefits, convertible 2-in-1 laptops, like the Product, allow consumers to use their devices in a wider range of functions, allowing for the temporary transformation of the device from a laptop to a freestanding or handheld tablet, and vice-versa as needed.

> Spin 1 laptop. The 11.6-inch touchscreen HD display provides crisp visuals and supports intuitive control, while the Intel Pentium Silver processor and 4GB of RAM power through everyday applications. This convertible Acer Spin 1 laptop has a 360-degree hinge for easy switching between tablet, tent and laptop modes.

Spin 1 laptop. The 11.6-inch touchscreen HD display provides crisp visuals and supports intuitive control, while the Intel Pentium Silver processor and 4GB of RAM power through everyday applications. This convertible Acer Spin 1 laptop has a 360-degree hinge for easy switching between tablet, tent and laptop modes.

6.   Companies, like Defendant, make it a point to highlight these attributes,

> Thin, light and convenient, the Spin 1 is designed to give you the freedom and power to explore.

==Thin, light and convenient, the Spin 1 is designed to give you the freedom and power to explore.==

7.   Despite the marketing of the Product as capable of functioning reliably and remaining in proper working condition for years to come, it did not function reliably or remain free of flaws, damage, or structural deficiencies.

8.   The hinge mechanism of the Product was defective, in that it was made of low-quality and/or low-strength materials, which caused the hinges to break and/or detach.

9.   This defect in turn caused (1) the two halves of the Product, the top panel and the base panel, to loosen and/or disconnect from each other, rendering the Product useless, or (2) the screen to separate from the top panel housing, which exposed the inside of the top panel, made the Product incapable of being closed properly, and affected the function and capabilities of the device.



10.  Most consumers have encountered this defect and the related issues without warning.

11.  In fact, many experienced the defect unexpectedly, once weakening, detachment, or separation occurred.

12. Significantly fewer were warned of the oncoming damage, by creaking or crunching noises made by the hinge and support mechanisms as they deteriorated over time, or by loose screws falling out from the inside.

13. However, the defect was present and continuously evolving much sooner than noticed or experienced.

14. This is because the plastic support components that contain the metal hinges and mounting hardware are too weak to withstand normal use, frequent opening-and-closing, and switching between laptop, tablet, and tent modes.

15. Even if there is proper maintenance and only normal and intended use of the Product, the defect and related issues occur.

> I just bought ACER spin 1 on July and two days ago while I use it, I find out the left hinge bottom area was cracked open. I Store it carefully and use it in the normal manner and store it far away from the sun. I brought it back to the retailer which informed me that this is physical damage which ACER will not cover it under warranty... is anyone has the same problem??

> ==I just bought ACER spin 1 on July and two days ago [in November] while I use it, I find out the left hinge bottom area was cracked open. I Store it carefully and use it in the normal manner and store it far away from the sun.== I brought it back to the retailer which informed me that this is physical damage which ACER will not cover it under warranty... is anyone has the same problem??

16. Consumers expect a laptop represented – directly or indirectly – as capable of functioning reliably and remaining in proper working condition for years to come, especially when it is marketed to have 360-degree hinges that allow for laptop, tent, and tablet modes, to function reliably and remain free of flaws, damage, and structural deficiencies.

17. Many individuals have complained online about the Product, the hinge mechanism defect, and Defendant's handling of the situation, on sites like *amazon.com*, *community.acer.com*, *reddit.com* and other forum communities.

4

> ★★☆☆☆ **Hinge broke in less than 4 months.**
> Reviewed in the United States on March 13, 2020
>
> Ridiculous. The hinge broke on a computer that as meant to fold backwards. This is the 2nd time this has happened to me from an ACER product. I thought this would be different as I bought it because the hinges should be stronger. I was mistaken. Processor is good though.

> ★☆☆☆☆ **DO NOT BUY! DO NOT WASTE YOUR MONEY!**
> Reviewed in the United States on September 24, 2020
> **Verified Purchase**
> DO NOT BUY!!!
> This laptop is bad quality. It didn't even last 4 months it was damaged so bad & when you open it, it kept making cracking noises even the charger was damaged. Their customer service is unprofessional they were not willing to consider giving us a refund or repair the damaged laptop. Don't waste your money it's not worth it !!

> ★☆☆☆☆ **Still under warranty, they won't cover design flaws!!**
> Reviewed in the United States on January 22, 2021
>
> I purchased an Acer spin because of the ability to change from laptop to computer. I have multiple tablets and full size laptop. What a mistake this is. I have had this since July 15 and only end up using it once a week or less because I dislike the Microsoft S mode. I picked it up today January 21 and noticed that the case is separating above the left hand side hinge. This is a design flaw in the computer not related to abuse, overuse or falls. And I feel that Acer should address this design flaw. I called the help line because this is still under warranty. Forget it! They don't cover flaws with the case! Never again will I purchase another Acer product. Buyer beware.

18. One individual stated that upon reporting the hinge defect and related issues to Defendant, he was left to deal with the Product at his own expense, as Defendant would not cover repairs.

19. This is because Defendant claims the hinge issues occur due to consumer misuse and are outside of warranty coverage.

> I had one which the hinge failed after four months. I liked the laptop other than the hinge so I bought another with a new hinge design and a basic square trade policy. Four months later the right hinge failed again. I called up Acer for their 1 year warranty. Turns out they won't honor it. They said even though the hinge failed, they would not cover it. They said that even though it only broke from the inside, that can only happen from misuse. That was obviously false but I wasn't worried because I bought a square trade standard plan which cover non-accidents including mechanical/electronic failures. So I decided to use my Square Trade warranty. They said that failed hinges aren't mechanical failures and refused to cover it. I asked how hinges aren't mechanical only for the to change topics or why why Acer wont cover them. They also said if Acer won't cover it, then neither will they. So now I'm the proud owner of two failed Acer laptops within a year and two fake warranties. Now as of this week the left hinge is failing. Eventually after an hour on the phone with square trade, they wouldn't honor the warranty but conveniently could refund my policy. I took the refund since the policy was apparently a scam product anyway. Any ideas on how to get Acer to honor the warranty?

5

I had one which the hinge failed after four months. I liked the laptop other than the hinge so I bought another with a new hinge design and a basic square trade policy. Four months later the right hinge failed again. I called up Acer for their 1 year warranty. Turns out they won't honor it. They said even though the hinge failed, they would not cover it. They said that even though it only broke from the inside, that can only happen from misuse. That was obviously false but I wasn't worried because I bought a square trade standard plan which cover non-accidents including mechanical/electronic failures. So I decided to use my Square Trade warranty. They said that failed hinges aren't mechanical failures and refused to cover it. I asked how hinges aren't mechanical only for the to change topics or why why Acer wont cover them. They also said if Acer won't cover it, then neither will they. So now I'm the proud owner of two failed Acer laptops within a year and two fake warranties. Now as of this week the left hinge is failing. Eventually after an hour on the phone with square trade, they wouldn't honor the warranty but conveniently could refund my policy. I took the refund since the policy was apparently a scam product anyway. Any ideas on how to get Acer to honor the warranty?

20. Another complaint stated that Acer would not cover repairs, because the hinge issues are considered physical damage and outside of warranty coverage.

I just bought ACER spin 1 on July and two days ago [in November] while I use it, I find out the left hinge bottom area was cracked open. I Store it carefully and use it in the normal manner and store it far away from the sun. I brought it back to the retailer which informed me that this is physical damage which ACER will not cover it under warranty... is anyone has the same problem??

21. The quoted cost of repairs that individuals received ran in the low hundreds.

22. Consumers often opt to instead use temporary remedies, like duct tape or glue to hold

6

the loosened or detached parts together, service their devices at third-parties, or repair the issues by themselves at home using online tutorials and replacement parts.

23. One individual stated that when the hinges on his Acer laptop broke, he took the device to a repair shop, only to be told that "the hinges on Acer always break," and that "this has been known for many years."

> Acer hinges are just *****, everyone knows this.  Bought an Acer once, never again for me.
> Took it to a repair shop and they just said that the hinges on Acer always break.
> Unbelievable that they haven't fixed the problem since this has been known for many years.

Acer hinges are just *****, everyone knows this.  Bought an Acer once, never again for me.  ==Took it to a repair shop and they just said that the hinges on Acer always break. Unbelievable that they haven't fixed the problem since this has been known for many years.==

24. Laptops made with hinges that can withstand normal and intended use, capable of functioning reliably and remaining in proper working condition for years to come, are available to consumers and are not technologically or commercially unfeasible.

25. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

26. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

27. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $399.99, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION AND VENUE

28. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

7

29. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

30. Plaintiff is a citizen of Florida.

31. Defendant is a California corporation with a principal place of business in California.

32. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

33. The members of the class Plaintiff seeks to represent are more than 100, because the Product have been sold for several years, with the representations described here, in hundreds of locations across the States covered by Plaintiff's proposed classes.

34. The Product is available to consumers from office supply stores, warehouse club stores, big box stores, and online.

35. Venue is in this District with assignment to the Tampa Division because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to these claims occurred in Pinellas County, including Plaintiff's purchase and/or use of the Product and awareness and/or experiences of and with the issues described here.

## PARTIES

36. Plaintiff Alex Volinsky is a citizen of Clearwater, Pinellas County, Florida.

37. Defendant Acer America Corporation is a California corporation with a principal place of business in San Jose, Santa Clara County, California.

38. Founded under the name Multitech by Stan Shih, wife Carolyn Yeh, and five partners in 1976, Acer is a Taiwanese multinational information and communications technology (ICT) company, with a presence in over 160 countries.

39. Its mission is to "break barriers between people and technology," and "is committed

to strengthening the foundations [in the PC and displays business] with technological innovations, and designing unique product lines for the specific needs of gamers, creators, education, usage in harsh environments, and more."

40. Products under the Acer brand have an industry-wide reputation for innovation, quality, and value.

41. The Product is available to consumers from office supply stores, warehouse club stores, big box stores, and online.

42. Plaintiff purchased the Product on one occasion within the statutes of limitations for each cause of action alleged, from Staples, in 2019.

43. Plaintiff bought the Product because he believed and expected that it would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use, because that is what the representations and omissions said and implied.

44. Plaintiff seeks to purchase laptops which function reliably and remain free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

45. Plaintiff relied on the words, descriptions, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

46. Plaintiff bought the Product at or exceeding the above-referenced price.

47. Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it.

48. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

49. Plaintiff chose between Defendant's Product and products represented similarly, but

which did not misrepresent their attributes, features, and/or components.

50. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

51. Plaintiff is unable to rely on the representations not only of this Product, but other similar laptop computers, because he is unsure whether those representations are truthful.

## CLASS ALLEGATIONS

52. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Virginia, West Virginia, Georgia, North Carolina, South Carolina, and Alaska who purchased the Product during the statutes of limitations for each cause of action alleged.

53. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

54. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

55. Plaintiff is an adequate representative because his interests do not conflict with other members.

56. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

57. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

10

58. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

59. Plaintiff seeks class-wide injunctive relief because the practices continue.

## CAUSES OF ACTION

### COUNT I

### Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*

60. Plaintiff incorporates by reference preceding paragraphs 1-27.

61. Plaintiff brings this claim on his own behalf and on behalf of each member of the Florida Class.

62. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

63. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, that it would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

64. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that the Product would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

65. Plaintiff and class members relied upon these representations in deciding to purchase the Product.

66. Plaintiff's reliance was reasonable because of Defendant's reputation as a trusted and reliable company, known for its high-quality electronics, honestly marketed to consumers.

67. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

68. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

69. Plaintiff and class members are entitled to damages in an amount to be proven at trial.

70. Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that the Product does not function reliably or remain free of flaws, damage, or structural deficiencies for many years, even when subject to normal and intended use.

## COUNT II

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

71. Plaintiff incorporates by reference preceding paragraphs 1-27.

72. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

73. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

74. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

## COUNT III

## False and Misleading Advertising,
## Fla. Stat. § 817.41

75. Plaintiff incorporates by reference preceding paragraphs 1-27.

76. Plaintiff brings this claim on his own behalf and on behalf of each member of the Florida Class.

77. Defendant made numerous misrepresentations of material fact, that the Product would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use, through its advertisements and marketing, through various forms of media, product descriptions distributed to resellers, and targeted digital advertising.

78. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

79. Defendant knew that these statements were false.

80. Defendant intended for consumers to rely on its false statements for the purpose of selling the Product.

81. Plaintiff and class members did in fact rely upon these statements.

82. Reliance was reasonable and justified because of Defendant's reputation as a trusted and reliable company, known for its high-quality electronics, honestly marketed to consumers.

83. As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product.

84. Plaintiff and class members are entitled to damages and injunctive relief as set forth above.

## COUNT IV

### Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

85. Plaintiff incorporates by reference preceding paragraphs 1-27.

86. The Product was manufactured, identified, marketed, distributed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

87. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, product descriptions distributed to resellers, and targeted digital advertising.

88. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing to directly meet those needs and desires.

89. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

90. Defendant's representations affirmed and promised that the Product would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

91. Defendant described the Product so Plaintiff believed it would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use, which became part of the basis of the bargain that it would conform to its affirmations and

14

promises.

92. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

93. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its high-quality electronics.

94. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

95. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

96. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

97. The Product did not conform to its promises or affirmations of fact due to Defendant's actions.

98. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made in marketing or advertising, because it was marketed as if it would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

99. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

## COUNT V

### Negligent Misrepresentation

100. Plaintiff incorporates by reference preceding paragraphs 1-27.

101. Defendant had a duty to truthfully represent the Product, which it breached.

102. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its high-quality electronics.

103. Defendant's representations and omissions went beyond the specific representations made in marketing, and incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

104. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

105. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

106. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

## COUNT VI

### Fraud
### (Fed. R. Civ. P. 9(b) Allegations)

107. Plaintiff incorporates by reference preceding paragraphs 1-27.

108. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

109. The records Defendant is required to maintain, and/or the information

inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

110. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

111. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

112. WHO: Defendant, Acer America Corporation, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing that the Product would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

113. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

114. Defendant omitted from Plaintiff and class members that the Product does not function reliably or remain free of flaws, damage, or structural deficiencies for many years, even when subject to normal and intended use.

115. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions.

116. Yet, Defendant has and continues to represent that the Product will function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

117. WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use, continuously throughout the applicable Class period(s).

118. WHERE: Defendant's material misrepresentations and omissions, that the Product would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use, were located in the advertising and marketing of the Product, through statements like "[t]he sleek all-metal design offers exceptional durability and ensures you work and play in style," which instantly catch the eye of all reasonable consumers, including Plaintiff, at the point of sale in every transaction.

119. The Product is sold in office supply stores, warehouse club stores, big box stores, and online.

120. HOW: Defendant made written and visual misrepresentations in the advertising and marketing of the Product, that it would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use.

121. As such, Defendant's representations are false and misleading.

122. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

123. WHY: Defendant misrepresented that the Product would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use, for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium.

124. As such, Defendant profited by selling the misrepresented Product to at least

thousands of consumers throughout the nation.

## COUNT VII

### Unjust Enrichment

125. Plaintiff incorporates by reference preceding paragraphs 1-27.

126. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   November 28, 2022

>                               Respectfully submitted,
>
>                               /s/ William Wright
>                               The Wright Law Office, P.A.
>                               515 N Flagler Dr Ste P-300
>                               West Palm Beach FL 33401
>                               (561) 514-0904
>                               willwright@wrightlawoffice.com
>
>                               Sheehan & Associates, P.C.

Spencer Sheehan (*Pro Hac Vice* forthcoming)
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com